**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MICHAEL K. TALUKER,**

                             **Plaintiff,**

   vs.                                                1:12-cv-1765
                                                          (MAD/CFH)

**COUNTY OF RENSSELAER,**
**CITY OF TROY, CITY OF TROY**
**POLICE DEPARTMENT,**
**POLICE OFFICER CHARLES D.**
**CASTLE, POLICE OFFICER**
**BUTTOFUCCO, POLICE**
**OFFICER McNULL, SERGEANT**
**G.E. ANDERSON, and POLICE**
**OFFICER JOHN DOE,**

                             **Defendants.**
_____

**APPEARANCES:**                                   **OF COUNSEL:**

**MICHAEL K. TALUKDER**
Auburn Correctional Facility
P.O. Box 618
Auburn, New York 13024
Plaintiff *pro se*

**CARTER, CONBOY, CASE, BLACKMORE,**      **JAMES A. RESILA, ESQ.**
**MALONEY & LAIRD, P.C.**
20 Corporate Woods Boulevard
Albany, New York 12211
Attorneys for Defendant Rensselaer


**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    Plaintiff commenced this action on November 30, 2012, seeking damages for alleged

violations of his constitutional rights.

Currently before the Court is Defendant County of Rensselaer's ("Rensselaer") motion to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted. *See* Dkt. No. 17 at 2. Defendant Rensselaer asserts that (1) Plaintiff failed to state a claim for which relief can be granted; (2) Plaintiff failed to state a claim pursuant to 42 U.S.C. § 1983 against the municipality; (3) Plaintiff failed to state a claim for false imprisonment; (4) Plaintiff failed to state a claim regarding the violation of his due process rights; (5) Plaintiff failed to state a claim for malicious abuse of process; (6) Plaintiff failed to state a claim against Defendant Rensselear for New York State constitutional violations upon which relief can be granted; and (7) the district attorney's actions are protected by absolute immunity. *See id.* at 2-10.

## II. BACKGROUND

On September 15, 2011, Defendant police officer John Doe ("Doe") stopped Plaintiff as Plaintiff walked down Old 6th Avenue in Troy, New York, because he looked suspicious. *See* Dkt. 1 at 1-2. Plaintiff gave Defendant Doe his identifying information, and Defendant Doe searched Plaintiff. *See id.* at 2. Defendant Doe found nothing, and told Plaintiff that he was "free to go, but [he] better get home & fast because if [he] was out when [the officer] came back around [he] wasn't going to make it home." *See id.* Two of Plaintiff's friends drove up to Plaintiff after seeing his interaction with Defendant Doe. *See id.* Plaintiff told his friends he needed to get home, and he was about to get in the car when two police cruisers pulled up with their lights on, blocking the car. *See id.* One of Plaintiff's friends ran from the scene, while the other instructed Plaintiff to enter the car, and drove away. *See id.*

When Plaintiff and his friend were pulled over, the police told them they had been pulled over because they had left the scene of a crime. *See id.* Plaintiff and his friend were brought to

2

the City of Troy Police Department, where they were told that the police found 1,500 milligrams of cocaine under the driver's seat of the car; Plaintiff and his friend explained that they had no knowledge of cocaine being in the vehicle. *See id.* Plaintiff and his friend were charged with Criminal Possession of a Controlled Substance in the Third Degree, Criminal Possession of a Controlled Substance in the Fifth Degree, and Loitering in the First Degree. *See id.* at 2-3.

Plaintiff had a preliminary hearing on September 20, 2011, at which Defendant police officers Buttofucco and Charles D. Castle ("Castle") gave inconsistent testimony regarding the location and quantity of drugs that were found in the vehicle. *See id.* at 3. Plaintiff was remanded to the Rensselaer County Jail pending grand jury action. Plaintiff testified at his grand jury on November 4, 2011. *See id.* Assistant District Attorney Elizabeth Kennedy advised Plaintiff to plead guilty, but he refused. *See id.* Plaintiff was released from jail on November 5, 2011, pursuant to C.P.L. § 190.80, because the prosecution had failed to indict Plaintiff within forty-five days after a preliminary hearing. *See id.* On November 25, 2011, all charges against Plaintiff were dismissed pursuant to C.P.L. § 160.50. *See id.*

On November 30, 2012, Plaintiff commenced this action. *See id.* at 1. Plaintiff alleges that police officers under Defendant City of Troy's ("Troy") and Defendant Rensselaer's oversight illegally searched and unlawfully detained him without cause or due process. *See id.* at 3-4. Further, Plaintiff alleges that Defendant Troy violated Plaintiff's right to due process by sending the case to the grand jury even though the relevant police officers' testimony were inconsistent at trial. *See id.* at 4.

Plaintiff claims that Defendants Castle, McNull, and Buttofucco illegally searched him, causing Plaintiff to be subjected to cruel and unusual punishment by being wrongfully accused and unlawfully detained. *See id.* Plaintiff argues that each officer did so under the color of law in

3

the State of New York, County of Rensselaer, and City of Troy. *See id.* Plaintiff alleges that Defendant Sergeant G.E. Anderson ("Anderson") allowed officers under his supervision to illegally search him, resulting in Plaintiff being subjected to cruel and unusual punishment. *See id.* at 4-5. Lastly, Plaintiff alleges that Defendant John Doe ("Doe") made indirect threats to and illegally searched Plaintiff, causing Plaintiff to be wrongfully accused and unlawfully detained. *See id.* at 5.

Plaintiff requests that Defendant Rensselaer be ordered to institute requirements for training and enforcing policies against abuses of power. *See id.* at 5. Plaintiff requests that Defendant Troy be ordered to monitor its law enforcement, and that Defendant City of Troy Police Department be ordered to institute police training, oversight, and repercussions to ensure citizens' rights are upheld. *See id.* Plaintiff further requests that Defendants Castle, Buttofucco, McNull, Anderson, and Doe be reprimanded or terminated as police officers. *See id.* at 5-6. Plaintiff seeks $1,000,000.00 in punitive damages from each of the eight defendants. *See id.* Lastly, Plaintiff requests that Defendant Rensselaer be ordered to create a $10,000,000.00 fund to assist citizens who have been "Illegally Stopped, Searched, Frisked, & Detained in direct violation of their Constitutional Rights." *See id.* at 6.

### III. DISCUSSION

**A.   Standard of Review**

A motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading

4

and draw all reasonable inferences in the pleader's favor. *See ASTI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's [f]actual allegations must be enough to raise a right of relief above the speculative level." *Id.* at 555 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the [ ] complaint must be dismissed[,]" *id.* at 570.

Despite this recent tightening of the standard for pleading a claim, complaints by *pro se* parties continue to be accorded more deference than those filed by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation omitted). As such, *Twombly* and *Iqbal* notwithstanding, this Court must continue to "'construe [a complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.'" *Weixel v. Bd. of Educ.*, 287 F.3d 138, 146 (2d Cir. 2002) (quotation omittes).

When a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112

5

(2d Cir. 2000) (internal quotation and citations omitted).  Of course, an opportunity to amend is not required where "[t]he problem with [the plaintiff's] cause of action is substantive" such that "better pleading will not cure it."  *Id.* (citation omitted).

**B.    Municipal liability**

In order to succeed in recovering from a municipality under section 1983, the plaintiff "must first prove the existence of a municipal policy or custom" that was the cause of his injuries.  *Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) (citation omitted).  "Second, the plaintiff must establish a causal connection – an 'affirmative link' – between the policy and the deprivation of his constitutional rights."  *Id.* (citations omitted).

To satisfy the first prong of the test on a motion to dismiss, the plaintiff must allege the existence of either (1) a formal policy, which the municipality has officially endorsed, *see Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978); (2) actions taken or decisions made by government officials responsible for establishing municipal policies which caused the alleged violation of the plaintiff's civil rights, *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986); (3) a practice so persistent and widespread that it constitutes a "custom or usage" and implies the constructive knowledge of policy-making officials, *see Monell*, 436 U.S. at 690-91; or (4) the failure of official policy-makers to train or supervise subordinates properly to such an extent that it "amounts to deliberate indifference to the rights of those with whom the [municipal employees] will come into contact," *City of Canton v. Harris*, 489 U.S. 378, 388 (1989) (footnote omitted).

In the present matter, Plaintiff offers no more than a bare recitation of the elements of this claim, without any factual support.  In the complaint, Plaintiff claims that Defendant Rensselaer

6

engaged in the following conduct: "The County of Rensselaer overseeing all Law Enforcement Agencies under it's Jurisdiction did allow Officers under their command to violate Plaintiff's Constitutional Rights by Unlawfully Detaining the Plaintiff because of an Illegal Search. The County of Rensselaer also ordered the Detaining of the Plaintiff without Cause nor Due Process." *See* Dkt. No. 1 at 3-4. This boilerplate recitation of the elements of a *Monell* claim is insufficient to survive a motion to dismiss. *See In re Dayton*, 786 F. Supp. 2d 809, 823 (S.D.N.Y. 2011) (dismissing the plaintiff's *Monell* claim against the City of Middletown and Orange County that merely alleged the City and County "'negligently failed to properly administer its agencies[,] departments[,] personnel[,] and the like in regard to the maintenance, design, supervision and control over those accused and detained'").

Further, Plaintiff does not allege any conduct on Defendant Rensselaer's part. All of the named Defendants are employees of Defendant Troy, not Defendant Rensselaer. Although Plaintiff asks the Court to ensure that Defendant Rensselaer institute policies to train its officers against abuses of power, Plaintiff fails to allege that there exists such a policy, custom or practice that let to a violation of his constitutional rights. *See Singleton v. City of New York*, 632 F.2d 185, 195 (2d Cir. 1980) (holding "that an 'official policy' cannot ordinarily be inferred from a single incident of illegality, such as a first false arrest or excessive use of force, absent some additional circumstances" (citation omitted)).

Finally, although Plaintiff alleges that Defendant Rensselaer "oversee[s] all Law Enforcement agencies under its jurisdiction," including the City of Troy Police Department, Plaintiff fails to state any basis for this presumption. Although the City of Troy is located within the borders of Defendant Rensselaer, they are separate political entities.

Based on the foregoing, the Court grants Defendant Rensselaer's motion to dismiss.[1]

**C.     False Imprisonment Claim**

In order to state a claim for false imprisonment under § 1983, a plaintiff "must demonstrate that defendant intended to confine him, he was conscious of the confinement, he did not consent to the confinement, and the confinement was not otherwise privileged." *Shain v. Ellison*, 273 F.3d 56, 67 (2d Cir. 2001).

In the present matter, Plaintiff offers no more than a bare recitation of the elements of this claim, without any factual support. Plaintiff was arrested by City of Troy police officers, not the County Sheriff's Department, and was subsequently charged with drug related offenses. *See* Dkt. No. 1 at 2-3. Plaintiff was then detained in the County jail pursuant to section 500-a(b) of the New York Correction Law. Plaintiff does not claim any independent violations of his rights during his incarceration.

Pursuant to New York Correction Law § 500-a(b), "each county jail shall be used . . . for the detention of persons charged with a crime, and committed for trial or examination." It is well settled that such a confinement is privileged and will not give rise to an action for false imprisonment/detainment. *See Kearney v. Westchester County Dept. of Corr.*, 2012 WL 6621457, *1 (2d Cir. Dec. 20, 2012) (citations omitted). Since Plaintiff concedes that he was detained pursuant to a court order pending "Grand Jury Action," his confinement was privileged and, therefore, he has failed to allege a plausible claim for false imprisonment/detention.

---

[1] Although the Court's determination that Plaintiff failed to state a plausible claim of municipal liability under 42 U.S.C. § 1983 is dispositive because Plaintiff did not name any individual employed by Defendant Rensselaer as a Defendant in this matter, the Court will still address the merits of Plaintiff's substantive claims as they relate to Defendant Rensselaer.

8

Based on the foregoing, the Court grants Defendant Rensselaer's motion to dismiss as to Plaintiff's false imprisonment/detention claim.

**D.    Due Process Claim**

In his complaint, Plaintiff does not state whether he is attempting to assert a procedural or substantive due process claim. Under either analysis, Plaintiff fails to state a plausible claim.

In order to prevail on a Fourteenth Amendment procedural due process claim pursuant to 42 U.S.C. § 1983, "the plaintiff must show (1) that he possessed a protected liberty or property interest; and (2) that he was deprived of that interest without due process." *Rehman v. State Univ. of N.Y. at Stony Brook*, 596 F. Supp. 2d 643, 656 (E.D.N.Y. 2009) (citing *McMenemy v. City of Rochester*, 241 F.3d 279, 285-86 (2d Cir. 2001)). "Property rights arise from '"an independent source such as state law," [with] federal constitutional law determin[ing] whether that interest rises to the level of a "legitimate claim of entitlement" protected by the Due Process Clause.'" *Pichen v. City of Auburn, N.Y.*, 728 F. Supp. 2d 192, 198 (N.D.N.Y. 2010) (quotation and other citation omitted).

To state a substantive due process claim, the plaintiff must show that (1) he had a valid property interest in a benefit that was entitled to constitutional protection, and (2) that the defendant's actions were "so outrageously arbitrary as to be gross abuse of governmental authority." *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 17 (2d Cir. 1999) (citation omitted).

In the present matter, Plaintiff fails to specify a valid property interest that was entitled to constitutional protection or that Defendant Rensselaer's actions were so outrageously arbitrary as to be a gross abuse of governmental authority. Further, Plaintiff fails to state any facts to support

9

his allegation that Defendant Rensselaer caused his detainment and, therefore, violated his due process rights.

Based on the foregoing, the Court grants Defendant Rensselaer's motion to dismiss as to this claim.

### E.     Abuse of process

The torts of malicious prosecution and abuse of process are very similar in nature.  *See Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994).  "While malicious prosecution concerns the improper issuance of process, '[t]he gist of abuse of process is the improper use of process after it is regularly issued.'"  *Id.* (quotation omitted).  Abuse of process is the use of "legal process to attain some collateral objective . . . ."  *Bd. of Educ. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Teachers Ass'n, Inc.*, 38 N.Y.2d 397, 402 (1975) (citations omitted).  Both malicious prosecution and abuse of process are recognized claims under section 1983.  *See Cook*, 41 F.3d at 80 (citations omitted).

The federal courts look to state law to determine the elements of an abuse of process claim.  *See id.* (citations omitted).  Pursuant to New York Law, an abuse of process claim lies against a defendant who "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process."  *Id.* (citations omitted).  Unlike malicious prosecution, favorable termination of the criminal proceeding is not an element of an abuse of process claim.  *See Dallas v. Goldberg*, 95 Civ. 9076, 2002 WL 1013291, *12 (S.D.N.Y. May 20, 2002).

Moreover, the plaintiff must allege that the process that the defendants issued was

10

improperly used after it was issued, not merely that the defendants acted with malice in bringing the action. *See Curiano v. Suozzi*, 63 N.Y.2d 113, 117 (1984) (citation omitted). As the Second Circuit has explained, "it is not sufficient for a plaintiff to allege that the defendant[ ] [was] seeking to retaliate against him by pursuing his arrest and prosecution. Instead, he must claim that [the defendant] aimed to achieve a collateral purpose beyond or in addition to [the plaintiff's] criminal prosecution." *Savino*, 331 F.3d at 77.

In the present matter, Plaintiff has failed to allege the elements of this cause of action and simply makes a legal conclusion without asserting any facts plausibly supporting an abuse of process claim. Further, the complaint fails to allege any facts suggesting an ulterior motive by Defendant Rensselaer or a collateral objective that Defendant Rensselaer might have sought to obtain through the use of legal process.

Based on the foregoing, the Court grants Defendant Rensselaer's motion to dismiss as to this claim.

### F.   Leave to amend

When a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citations omitted). Of course, an opportunity to amend is not required where "[t]he problem with [the plaintiff's] cause of action is substantive" such that "better pleading will not cure it." *Id.* (citation omitted).

Although a Court should generally grant a plaintiff proceeding *pro se* at least one opportunity to amend when dismissing a complaint for failure to state a claim, no such

opportunity is required when it is clear that such an amendment would be futile, as is the case in the present matter.  In his response to Defendant Rensselaer's motion to dismiss, Plaintiff makes clear that the only reason he included Defendant Rensselaer in this matter is because "[t]he County of Rensselaer has municipal liability over the City of Troy[,] who has municipal liability over the City of Troy Police Department."  *See* Dkt. No. 26 at 3.  As discussed, Defendant Rensselaer and the Defendant Troy are separate municipal entities, not subject to liability for the other's actions, absent their personal involvement in the alleged unconstitutional conduct. Plaintiff's complaint and response to Defendant Rensselaer's motion make clear that Defendant Rensselaer is included as a Defendant merely because it is the county in which Defendant Troy is located.

Based on the foregoing, the Court finds that the claims against Defendant Rensselaer should be dismissed with prejudice because any amendment to the complaint as to this Defendant would be futile.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant Rensselaer's motion to dismiss Plaintiff's complaint is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's claims against Defendant Rensselaer are **DISMISSED with prejudice**; and the Court further

**ORDERS** that the Clerk of the Court shall terminate Defendant Rensselaer from this action; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: June 5, 2013
      Albany, New York

Mae A. D'Agostino
U.S. District Judge