**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**MICHAEL K. TALUKDER,**

                      **Plaintiff,**

   vs.                                            **1:12-cv-1765
                                                         (MAD/CFH)**

**CITY OF TROY, CITY OF TROY
POLICE DEPARTMENT,
POLICE OFFICER CHARLES D.
CASTLE, POLICE OFFICER
BUTTOFUCCO, POLICE
OFFICER McNULL, SERGEANT
G.E. ANDERSON, and POLICE
OFFICER JOHN DOE,**

                      **Defendants.**
_____

**APPEARANCES:**                                     **OF COUNSEL:**

**MICHAEL K. TALUKDER**
Narco Freedom
670 St. Ann's Street
Bronx, New York 10455
Plaintiff *pro se*

**PATTISON, SAMPSON,**                       **DONALD J. SHANLEY, ESQ.**
**GINSBERG & GRIFFIN, P.C.**
22 First Street
Troy, New York 12181
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

     On November 30, 2012, Plaintiff commenced this action pursuant to 42 U.S.C. § 1983 seeking damages for alleged violations of his constitutional rights. *See* Dkt. No. 1. Currently before the Court is Defendants' motion for summary judgment. *See* Dkt. Nos. 61, 64, 69, 72, 76.

## II. BACKGROUND

On September 15, 2011, Defendant police officer John Doe ("Doe") stopped Plaintiff as Plaintiff walked down Old 6th Avenue in Troy, New York because Defendant Doe suspected that Plaintiff had illegal drugs in his possession. *See* Dkt. No. 1 at 1-2.[1] Plaintiff gave Defendant Doe his identifying information, and Defendant Doe searched Plaintiff. *See id.* at 2. Defendant Doe found nothing, and told Plaintiff that he was free to go, but that he "better get home [and] fast." *Id.*

Two of Plaintiff's friends, who were in a PT Cruiser, drove up to Plaintiff after seeing his interaction with Defendant Doe. *See id.* Plaintiff told his friends he needed to get home, and he was about to get in the car when two police cruisers pulled up with their lights on, blocking the car. *See id.* One of Plaintiff's friends ran from the scene, while the other instructed Plaintiff to enter the car. *See id.* Plaintiff entered the car, and they proceeded to drive away. *See id.*

According to Defendant Buttofucco, he was on duty on September 15, 2011, working the midnight shift from 11:30 p.m. to 7:30 a.m. *See* Dkt. No. 76-10 at ¶ 7. While at the Central Police Station, he heard a radio transmission about police officers involved in a foot pursuit of a subject in the area of Old Sixth Avenue. *See id.* at ¶ 8. Although Defendant Buttofucco did not know who was being chased or for what, he headed to the area reported in his police cruiser to serve as back-up to the pursuing officers. *See id.* Shortly thereafter, Defendant Buttofucco heard another radio transmission indicating that a PT Cruiser had fled from the scene and all officers were advised to be on the lookout for the automobile and stop it if seen. *See id.* Another radio transmission followed, indicating that Defendant Castle had stopped the automobile, at which

---

[1] To avoid confusion, whenever the Court references a specific page number for an entry on the docket, it will cite to the page number assigned by the Court's electronic filling system.

point Defendant Buttofucco headed to the scene to assist. *See id.*

The police informed the driver, Dalila Gonzalez, and Plaintiff that they had been pulled over because they had left the scene of a crime. *See id.* at ¶ 9; Dkt. No. 1 at 2. Neither of them had a valid driver's license and the owner of the vehicle was unknown, so a tow truck was called pursuant to departmental protocol. *See* Dkt. No. 69-13 at ¶ 11. Following police protocol, Defendant Police Officers Joseph McNull ("McNull")[2] and Charles Castle ("Castle") conducted an inventory search prior to the vehicle being towed. *See id.* at ¶ 12. During that search, the officers found cocaine in the front of the vehicle. *See id.* Both Plaintiff and his friend were placed under arrest and searched. *See id.* at ¶¶ 14-15. Plaintiff and his friend explained that the cocaine did not belong to them and that they had no knowledge of it being in the vehicle. *See* Dkt. No. 1 at 2. They were brought to the City of Troy Police Department, where they were searched again during the booking process. *See* Dkt. No. 69-13 at ¶ 16. Plaintiff was charged with Criminal Possession of a Controlled Substance in the Third Degree, Criminal Possession of a Controlled Substance in the Fifth Degree, and Loitering in the First Degree. *See* Dkt. No. 1 at 2-3.

Plaintiff had a preliminary hearing on September 20, 2011, in which the Troy City Court found that there was probable cause to believe that Plaintiff committed a felony. *See* Dkt. No. 69-6 at 33. Plaintiff was then remanded to the Rensselaer County Jail pending grand jury action. *See* Dkt. No. 1 at 3. Plaintiff testified before the grand jury on November 4, 2011. *See id.* Assistant District Attorney Elizabeth Kennedy advised Plaintiff to plead guilty, but he refused. *See id.* Plaintiff was released from jail on November 5, 2011, pursuant to New York Criminal Procedure

---

[2] The Court notes that there has been a discrepancy regarding the spelling of Defendant McNull's name, as Defendants' counsel has referred to him as "McNall" in several papers. The Court will refer to him as McNull.

3

Law ("C.P.L.") § 190.80, because the prosecution had failed to indict him within forty-five days after his preliminary hearing. *See id.* On November 25, 2011, all charges against Plaintiff were dismissed pursuant to C.P.L. § 160.50. *See id.*

On November 30, 2012, Plaintiff commenced this action. *See id.* at 1. Plaintiff alleges that police officers under the supervision of Defendant City of Troy ("Troy") and Defendant City of Troy Police Department illegally searched and unlawfully detained him without cause or due process. *See id.* at 3-4. Further, Plaintiff alleges that Defendant Troy violated Plaintiff's right to due process by sending the case to the grand jury even though the relevant police officers provided inconsistent testimony at the preliminary hearing. *See id.* at 4.

Plaintiff claims that Defendants Castle, McNull, and Buttofucco illegally searched him and subjected him to cruel and unusual punishment through his wrongful detention. *See id.* Plaintiff alleges that Defendant Anderson allowed officers under his supervision to illegally search Plaintiff, resulting in Plaintiff being subjected to cruel and unusual punishment. *See id.* at 4-5. Finally, Plaintiff alleges that Defendant Doe illegally searched him, causing Plaintiff to be wrongfully accused and unlawfully detained. *See id.* at 5.

Plaintiff requests that Defendant Troy be ordered to monitor its law enforcement, and that Defendant City of Troy Police Department be ordered to institute police training, oversight, and repercussions to ensure that citizens' rights are upheld. *See id.* Plaintiff further requests that Defendants Castle, Buttofucco, McNull, Anderson, and Doe be reprimanded or terminated as police officers. *See id.* at 5-6. Plaintiff seeks $1,000,000.00 in compensatory damages and punitive damages from each Defendant. *See id.*

Defendants have filed separate motions for summary judgment. *See* Dkt. Nos. 61, 64, 69, 72, 76. Defendant Troy argues that Plaintiff cannot establish municipal liability. *See* Dkt. No.

4

61-7 at 8-11. Defendants Castle, McNull, and Buttofucco argue that there was probable cause to arrest Plaintiff, and that any search of Plaintiff was incidental to his lawful arrest. *See* Dkt. Nos. 69-14, 72-11, 76-11. Defendant Anderson argues that the arresting officers were not under his supervision at the time of the arrest. *See* Dkt. No. 64-10 at 8. Further, each individual Defendant argues that he is entitled to qualified immunity. *See* Dkt. Nos. 64-10 at 9, 69-14 at 20-21, 72-11 at 15-16, 76-11 at 15-16. Plaintiff has not opposed Defendants' motion.

### III. DISCUSSION

**A.     Standard of Review**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the

court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

In reviewing a *pro se* case, the court "must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 303 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)) (other citations omitted). "Indeed, the Second Circuit has stated that '[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). This does not mean, however, that a *pro se* litigant is excused from following the procedural requirements of summary judgment. *See id.* (citing *Showers v. Eastmond*, No. 00 CIV. 3725, 2001 WL 527484, *2 (S.D.N.Y. May 16, 2001)). Specifically, "a *pro se* party's 'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

**B.     Municipal liability**

Defendant Troy argues that it should be granted summary judgment because Plaintiff has not established a municipal policy that caused a deprivation of his constitutional rights. *See* Dkt. No. 61-7 at 8-10. Defendant Troy further argues that Plaintiff's claims arise from a single incident of alleged unconstitutional activity, which is insufficient to establish municipal liability.

*See id.*

"Although municipalities are within the ambit of section 1983, municipal liability does not attach for actions undertaken by city employees under a theory of *respondeat superior*." *Birdsall v. City of Hartford*, 249 F. Supp. 2d 163, 173 (D. Conn. 2003) (citing *Monell v. New York City Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978)). Despite the fact that *respondeat superior* liability does not lie, a municipal entity or employee sued in his or her official capacity can be held accountable for a constitutional violation which has occurred pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers . . . [or] pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell*, 436 U.S. at 690-91. Such municipal liability can be established in a case such as this in several different ways, including through proof of an officially adopted rule or widespread, informal custom demonstrating "a deliberate government policy or failing to train or supervise its officers." *Bruker v. City of New York*, 337 F. Supp. 2d 539, 556 (S.D.N.Y. 2004) (quoting *Anthony v. City of New York*, 339 F.3d 129, 140 (2d Cir. 2003)). A plaintiff may also show that the allegedly unconstitutional action was "taken or caused by an official whose actions represent an official policy," or when municipal officers have acquiesced in or condoned a known policy, custom, or practice. *See Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000), *cert. denied sub nom.*, *County of Schenectady v. Jeffes*, 531 U.S. 813 (2000); *see also Wenger v. Canastota Cent. Sch. Dist.*, No. 5:95-CV-1081, 2004 WL 726007, *3 (N.D.N.Y. Apr. 5, 2004). It is well established that a single incident is generally insufficient to raise the inference of the existence of a custom or policy potentially giving rise to municipal liability. *See Singleton v. City of New York*, 632 F.2d 185, 195 (2d Cir. 1980) (holding that "an 'official policy' cannot ordinarily be

inferred from a single incident of illegality, such as a first false arrest or excessive use of force, absent some additional circumstances" (citation omitted)).

Here, Plaintiff has failed to identify a formal policy that deprived him of his constitutional rights. His allegations merely arise from the single incident of his arrest, which is insufficient to establish municipal liability. Moreover, none of the arresting officers have policymaking authority on behalf of Defendant Troy, nor do their actions represent an official policy of the City of Troy. As such, the City of Troy is hereby dismissed as a Defendant in this action.[3]

**C.     Defendant City of Troy Police Department**

Under New York State Law, "'a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence.'" *Polite v. Town of Clarkstown*, 60 F. Supp. 2d 214, 216 (S.D.N.Y. 1999) (quotation omitted). As a result, municipal departments in New York are not amenable to suit. *See id.* (citations omitted). Accordingly, the City of Troy Police Department is hereby dismissed as a Defendant in this action.

**D.     False arrest**

Plaintiff claims that Defendants Castle, McNull, and Buttofucco unlawfully detained him. *See* Dkt. No. 1 at 4. Defendant police officers assert that they had probable cause to arrest Plaintiff, and thus, his arrest was lawful. *See* Dkt. Nos. 69-14 at 18, 72-11 at 13, 76-11 at 13.

"A § 1983 claim for false arrest, . . . including arrest without probable cause, . . . is substantially the same as a claim for false arrest under New York law[.]" *Weyant v. Okst*, 101

---

[3] Plaintiff's claim that his due process rights were violated is also dismissed, as Defendant Troy was the only named Defendant for this claim.

8

F.3d 845, 852 (2d Cir. 1996) (internal citations omitted). Under both New York law and the Fourth Amendment to the United States Constitution, a plaintiff claiming false arrest must establish the following: "'(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Curry v. City of Syracuse*, 316 F.3d 324, 335 (2d Cir. 2003) (quotation omitted).

Defendants do not contest the first three elements. Accordingly, the only question is whether Plaintiff's arrest was "privileged" or "justified." "'Justification may be established by showing that the arrest was based on probable cause.'" *Savino v. City of N.Y.*, 331 F.3d 63, 76 (2d Cir. 2003) (quotation omitted). Probable cause exists "when the arresting officer has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed a crime or is committing a crime.'" *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (quotation omitted). Moreover, "a pretrial determination of probable cause . . . creates a presumption of probable cause . . . that can be overcome only upon a showing of fraud, perjury or the withholding of evidence[.]" *Brown v. Roland*, 215 A.D.2d 1000, 1001 (3d Dept. 1995) (citations omitted).[4]

In the present matter, Plaintiff and his friend were pulled over and neither of them had a driver's license. *See* Dkt. No. 69-1 at ¶ 9. As such, Defendants Castle and McNull called for a tow truck and took inventory of the vehicle pursuant to police protocol. *See id.* at ¶¶ 11-12. The officers found two packages of cocaine in the vehicle while conducting an inventory search. *See*

---

[4] Although probable cause is a defense to both false arrest and malicious prosecution claims, the probable cause analysis for each claim is slightly different. Therefore, the Court will analyze Plaintiff's false arrest and malicious prosecution claims separately. *See Kavazanjian v. Rice*, No. 03-CV-1923, 2005 WL 1377946, *4 (E.D.N.Y. June 6, 2005) (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569, 571 (2d Cir. 1996)).

9

*id.* at ¶ 14. New York law provides that "[t]he presence of a controlled substance in an automobile, other than a public omnibus, is presumptive evidence of knowing possession thereof by each and every person in the automobile at the time such controlled substance was found[.]" N.Y. Penal Law § 220.25 (McKinney 1985). Since the presence of narcotics in an automobile creates a presumption that each occupant in the automobile knowingly possessed the narcotics, and Plaintiff was an occupant in the automobile, the officers arrested Plaintiff. It was reasonable for the officers to conclude that Plaintiff had committed a crime based on this presumption.

Moreover, at the conclusion of Plaintiff's preliminary hearing on September 20, 2011, City Court Judge Maier found that there was probable cause to believe that Plaintiff committed a felony. *See* Dkt. No. 69-6 at 33. As previously mentioned, a pretrial determination of probable cause, such as this one, creates a presumption of probable cause that can only be overcome by fraud, perjury, or the withholding of evidence. *See Brown*, 215 A.D.2d at 1001. Although Plaintiff is held to a more lenient standard because he is a *pro se* litigant, he has not submitted any evidence to overcome this presumption of probable cause, or raised any issues as to the material facts surrounding his arrest.

Based on the foregoing, the Court grants Defendants' motion for summary judgment as to Plaintiff's false arrest claim.

**E.    Malicious prosecution**

Although Plaintiff has not explicitly stated a claim for malicious prosecution, the Court will construe his claim of being wrongfully accused and illegally detained as a malicious prosecution claim. Defendants anticipated that the Court would do so, and they argue that they had probable cause to charge Plaintiff and that they were not motivated by malice, and thus,

10

summary judgment should be granted should be granted in their favor. *See* Dkt. Nos. 69-14 at 19-20, 72-11 at 14-15, 76-11 at 14-15.

"The Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person – *i.e.*, the right to be free of unreasonable or unwarranted restraints on personal liberty." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995). To assert a Fourth Amendment claim for malicious prosecution under section 1983, a plaintiff must show a deprivation of his liberty consistent with the concept of "seizure," so as to ensure that the harm suffered is of "constitutional proportions." *See id.*

The elements of malicious prosecution under section 1983 are virtually identical to the elements of the same claim under New York law. *See Hygh v. Jacobs*, 961 F.2d 359, 366 (2d Cir. 1992) (citations omitted). To state a cause of action for malicious prosecution in New York, the plaintiff must prove "'(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.'" *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003) (quotation omitted). "Unlike an arrest, which only requires probable cause that 'the suspect had committed . . . an offense[,]' a prosecution requires probable cause 'to charge [the suspect] with each of the crimes.'" *Kavazanjian v. Rice*, No. 03-CV-1923, 2005 WL 1377946, *4 (E.D.N.Y. June 6, 2005) (quoting *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569, 571 (2d Cir. 1996)). In the present matter, the first two elements are not contested. Accordingly, Plaintiff must prove that there was no probable cause to charge him with the crimes, and that the officers were motivated by actual malice.

"In the context of a malicious prosecution claim, probable cause under New York law is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief

11

that he has lawful grounds for prosecuting the defendant in the manner complained of." *Rounseville v. Zahl*, 13 F.3d 625, 629-30 (2d Cir. 1994) (internal quotations and citations omitted); *see also Colon v. New York*, 60 N.Y.2d 78, 82 (1983) (holding that probable cause to prosecute consists of "such facts and circumstances as would lead a reasonably prudent person in like circumstances to believe plaintiff guilty"). "[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Savino*, 331 F.3d at 72; *see also Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. 2010).

Plaintiff was charged with Criminal Possession of a Controlled Substance in the Third Degree and Criminal Possession of a Controlled Substance in the Fifth Degree. *See* Dkt. No. 1 at 2-3. Given that the presence of a controlled substance in an automobile is presumptive evidence that each occupant in the automobile is in knowing possession thereof, the officers had probable cause to charge Plaintiff with these crimes. *See* N.Y. Penal Law § 220.25 (McKinney 1985). Similarly, after holding a preliminary hearing, Judge Maier concluded that there was probable cause to believe that Plaintiff committed the crimes. *See* Dkt. No. 76-6 at 34. As such, the Court finds that Defendant police officers had probable cause to commence the proceeding.

Although the existence of probable cause is a complete defense to a malicious prosecution claim, the Court will also analyze whether the element of actual malice was met. Actual malice "'does not require a plaintiff to prove that the defendant was motivated by spite or hatred[,]'" but instead that he initiated or continued the criminal proceeding "'due to a wrong or improper motive, something other than a desire to see the ends of justice served.'" *Rounseville v. Zahl*, 13 F.3d 625, 630 (2d Cir. 1994) (quotation omitted). Actual malice typically is shown by circumstantial evidence, including a lack of probable cause. *See Martin v. City of Albany*, 42 N.Y.2d 13, 17 (1977). Here, there is no evidence that Defendant police officers acted with

malice. The evidence suggests that their only motivation for arresting Plaintiff was the finding of illegal narcotics in the vehicle that Plaintiff was in, and Plaintiff has presented no evidence to rebut this. *See* Dkt. Nos. 69-1 at ¶ 32, 76-9 at ¶ 19.

Accordingly, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's malicious prosecution claims.

**F.     Unlawful search**

Plaintiff claims that he was unlawfully searched on three separate occasions. Plaintiff asserts that Defendant John Doe unlawfully searched him while he was walking down the street before he entered the vehicle. *See* Dkt. No. 1 at 2. Plaintiff also contends that he was unlawfully searched at the time of his arrest and during the booking process at the police station. *See* Dkt. No. 69-12. Defendants argue that (1) Plaintiff cannot identify who searched him; (2) any search was incidental to Plaintiff's lawful arrest; and (3) Plaintiff suffered no damages as a result of the search. *See* Dkt. No. 69-14 at 9-16.

"[W]here police officers have probable cause to effect a custodial arrest, they may search the suspect without a warrant incident to that arrest." *United States v. Herron*, No. 10-CR-0615, 2014 WL 1698905, *7 (E.D.N.Y. Apr. 29, 2014) (citing *United States v. Robinson*, 414 U.S. 218 (1973)). "[T]he search can take place either at the scene of the arrest or later at the police station[.]" *Herron*, 2014 WL 1698905 at *7 (citing *United States v. Edwards*, 415 U.S. 800, 807 (1974)).

In the present matter, since the officers had probable cause to arrest Plaintiff, as discussed above, they also had the right to search Plaintiff incident to that arrest. *See id.* As such, the searches at the scene of the arrest and at the police station were lawful. With respect to

13

Defendant John Doe's search of Plaintiff prior to his arrest, although this search would require a separate inquiry as to whether Defendant Doe was justified in searching Plaintiff because this particular search was not incidental to Plaintiff's arrest, Plaintiff has failed to identify the officer who searched him. Without the identity of the officer, Plaintiff cannot prevail on this claim.

Although Plaintiff has not questioned the search of the automobile, the Court will also address the legality of this search. Defendants Castle and McNull took inventory of the vehicle before it was towed pursuant to police protocol. *See* Dkt. No. 69-13 at ¶ 12. "[T]he United States Supreme Court has clarified that when the police tow and impound a vehicle, they are permitted to conduct an inventory search of the vehicle as long as they do so in accordance with constitutionally proper procedures." *People v. Iverson*, 22 Misc. 3d 470, 474 (N.Y. City Ct. 2008) (citing *South Dakota v. Opperman*, 428 U.S. 364 (1976)) (other citation omitted). Here, the officers conducted an inventory search when they towed the vehicle, and there is no evidence that they used an improper procedure to search the vehicle. As such, their search was lawful.

Accordingly, Defendants' motion for summary judgment is granted with respect to Plaintiff's unlawful search claims.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motions for summary judgment are **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case.

**IT IS SO ORDERED.**

Dated: July 23, 2014
      Albany, New York

Mae A. D'Agostino
U.S. District Judge